IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 83-CR-40060-NJR |
| RANDY GOMETZ, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is the Motion for Compassionate Release under the First Step Act filed *pro se* by Defendant Randy Gometz (Doc. 6). Gometz asks the Court to reduce his sentence to time-served due to the COVID-19 pandemic and his serious health conditions. The United States opposes a reduction in sentence (Doc. 9). For the reasons set forth below, Gometz's motion is denied.

## BACKGROUND

Defendant Randy Gometz has a long history of criminal activity. In 1973, Gometz pleaded guilty to aggravated assault and received a sentence of nine months in prison. (*Id.* at p. 6). Shortly after his release from prison in 1974, Gometz committed a series of robberies in Georgia, Indiana, and Tennessee. (*Id.* at pp. 6-8). Gometz did not injure anyone during this spree; however, he did furnish a gun during two of the robberies. (*Id.*). Gometz received a 15-year sentence in the Bureau of Prisons ("BOP") for all three robberies. (*Id.*).

While serving this sentence, on April 23, 1982, Gometz pleaded guilty to assaulting another prisoner with a knife and received a one-year sentence to be served consecutively to his original 15-year sentence. (*Id.* at p. 8). After another fighting incident in prison, on June 16, 1982, a jury found Gometz guilty of assaulting a correctional officer by punching him in the head, and he received an additional three years to be served consecutively to his other sentences. (*Id.* at pp. 8-9).

Gometz eventually was moved to a maximum-security prison in Marion, Illinois. (*Id.* at p. 9). There, he proved to be a management problem for the BOP, incurring over 100 incident reports in nine years for infractions against staff and other prisoners involving assault, escape attempts, and other disruptive conduct. (*Id.*). While in the maximum-security facility, Gometz helped uncuff a fellow prisoner and provided him with a homemade knife. *U.S. v. Fountain, et al.*, 768 F.2d 790, 793 (7th Cir. 1985). The fellow prisoner used the knife to fatally stab a correctional officer 29 times. *Id.* On February 9, 1984, a jury found Gometz guilty of Aiding and Abetting in Commission of Murder of a Correctional Officer. Gometz ultimately was sentenced to life in prison—the sentence he now asks this Court to reduce to time-served.[1] (Doc. 6). Gometz's projected parole date is May 15, 2024. (Doc. 6 at p. 6).

## THE FIRST STEP ACT OF 2018

Prior to the passage of the First Step Act, a defendant seeking compassionate

---

[1] On May 31, 1984, former District Judge James L. Foreman sentenced Gometz to a minimum term of 50 years and a maximum term of 150 years of imprisonment following the jury's guilty verdict. (Doc. 2). On direct appeal, the Seventh Circuit affirmed Gometz's conviction, but remanded the case for resentencing, as the Court found life imprisonment was the only authorized sentence. *U.S. v. Fountain, et al.*, 768 F.2d 790, 799 (7th Cir. 1985).

release first had to request it from the Director of the BOP. 18 U.S.C. § 3582(c)(1)(A) (2018). The First Step Act of 2018 modified that provision to allow incarcerated defendants to seek compassionate release from a court on their own motion after exhausting administrative rights to appeal a failure of the BOP to bring a motion on their behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.[2]

After such a motion is filed, either by the Director of the BOP or by the defendant, the Court may reduce the term of imprisonment after considering the factors set forth in § 3553(a) to the extent they are applicable, upon a finding that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i).

The applicable policy statement can be found at U.S.S.G. § 1B1.13. While the policy statement essentially restates § 3582(c)(1)(A), the Application Notes to the policy statement set forth specific circumstances under which extraordinary and compelling reasons exist for reducing a sentence: (A) the medical condition of the defendant; (B) the age of the defendant (over 70), and (C) family circumstances. U.S.S.G. 1B1.13. A fourth category, "(D) Other Reasons," states: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* Additionally, the policy statement requires the defendant not be "a danger to the safety

---

[2] The United States agrees that Gometz has exhausted his administrative remedies. (Doc. 9, pp. 14).

of any other person or to the community" pursuant to 18 U.S.C. § 3142(g).

## DISCUSSION

Under Application Note 1(A)(ii), extraordinary and compelling reasons for reducing a sentence exist where the defendant is suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. Gometz argues that his age of 65, combined with his severe medical conditions including asthma and desert allergies, place him at a higher risk of dying from COVID-19 and, thus, constitute extraordinary and compelling reasons for compassionate release.

In response, the Government acknowledges that Gometz suffers from asthma. Additionally, the Government recognizes that the Center for Disease Control ("CDC") lists moderate to severe asthma as placing individuals at an increased risk from COVID-19. It disputes, however, the severity of Gometz's asthma and the risk it presents. The Government emphasizes that Gometz's asthma is mild, sufficiently controlled by a daily inhaler, and appropriately treated through medical services at his current facility. Moreover, the Government notes that in USP Tucson, Gometz's current facility, only three prisoners and no staff members have contracted COVID-19, and the BOP has engaged in efforts to protect against the spread of the disease. (Doc. 9, pp. 17-18).

While Gometz has asthma and allergies, which combined with his age may place him at an increased risk of severe illness from the coronavirus, his records indicate that these conditions are well controlled by medication and are being appropriately managed

by the medical staff at USP Tucson. Thus, even combined with the COVID-19 pandemic, the Court finds that there is no evidence Gometz is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover.

Furthermore, even if Gometz's conditions qualified as extraordinary or compelling, in order to grant his motion for compassionate release, the Court also must consider the § 3553(a) factors and determine that Gometz is not "a danger to the safety of any other person or to the community." As to Gometz, the Court cannot make that finding.

Gometz has a substantial criminal history. His adult convictions began at the age of 18 and include: aggravated assault, bank robbery, armed bank robbery, assault, assault on a correctional officer, and aiding and abetting in the murder of a correctional officer. That last offense was committed while Gometz was serving a 19-year sentence in a maximum-security prison where he was confined in his cell for 23 hours a day. *Fountain*, 768 F.2d at 793. Since his incarceration, Gometz has amassed violations for assault, escape attempts, and other disruptive conduct.

Gometz argues that he has changed. (Doc. 6). As evidence of his reform, Gometz notes that he has not received any misconduct reports in 25 of the last 46 years, he has committed to spiritual practice, he has completed mental health treatment, and he has furthered his education. (*Id.*). While BOP records support Gometz's claims, the Government argues that these accomplishments do not show that Gometz no longer poses a danger to others. (Doc. 9, pp. 19-20; Doc. 9-10 – 9-13).

The Court agrees. Given Gometz's significant—and violent—criminal history, the Court cannot say that Gometz would not be a danger to the safety of any other person or the community if he were released. While the Court respects and applauds Gometz's considerable efforts to better himself, those accomplishments unfortunately are not enough to warrant compassionate release under 18 U.S.C. § 3582.

## CONCLUSION

For these reasons, the *pro se* Motion for Compassionate Release filed by Defendant Randy Gometz (Doc. 6) is **DENIED.**

**IT IS SO ORDERED.**

**DATED:** October 27, 2020

*[signature]*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**